UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| CHARLENE SUMNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:16-cv-149-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*\*

Plaintiff Charlene Sumner brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.

1

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

On January 7, 2008, Plaintiff filed a Title XVI application for supplemental security income ("SSI"), alleging disability as of July 1, 2003. [TR 192-94]. Plaintiff's claims were denied

initially and on reconsideration. [TR 63-64, 78-87]. Plaintiff then requested a hearing on the matter. [TR 69-72]. However, Administrative Law Judge ("ALJ") David Daugherty reviewed the evidence of record and found that it "support[ed] a fully favorable decision," obviating the need for a hearing. [*Id.*]. Accordingly, on October 6, 2008, ALJ Daugherty issued a written decision, in which he concluded that Plaintiff was disabled as of July 1, 2003. [*Id.*]. Attorney Eric C. Conn represented Plaintiff throughout this disability determination process. [*Id.*].

The Office of the Inspector General later notified the Social Security Administration ("SSA") that there was reason to believe that fraud was involved in certain cases submitted to the SSA by Eric C. Conn, which included faulty evidence submitted by Bradley Adkins, Ph. D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., and/or David P. Herr, D.O., between January 2007 and May 2011. [TR 20]. Because Plaintiff was represented by Eric C. Conn during the aforementioned time period, and because her case included evidence obtained from one or more of the aforementioned medical providers, the SSA had to redetermine her eligibility for benefits. [*Id.*].

In redetermining Plaintiff's claim for benefits, the Appeals Council ("AC") was obliged to disregard all evidence obtained from the aforementioned medical providers. [*Id.*]. On July 16, 2015,

3

the AC found that ALJ Daugherty's decision was not supported by the remaining evidence. [TR 73-74]. It then remanded the case to ALJ Joseph R. Doyle for a new hearing and further redetermination proceedings. [*Id.;* TR 20].

On March 11, 2016, ALJ Doyle held a video hearing. [TR 21]. Plaintiff, now represented by attorney Ronald C. Cox, participated in the hearing, along with impartial vocational expert David E. Stewart. [*Id.*]. Consistent with the AC's instructions, ALJ Doyle disregarded evidence obtained from the aforementioned medical providers, but "considered all other evidence relating to the period prior to the original allowance date of October 6, 2008, including new and material evidence reasonably related to the period at issue." [TR 21]. ALJ Doyle also preserved Plaintiff's objection to the constitutionality of the redetermination process, but explained that he lacked the authority to adjudicate the issue. [*Id.*]. He then proceeded with his disability determination analysis. [*Id.*].

At Step One, ALJ Doyle found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [TR 24]. At Step Two, he concluded that Plaintiff had the following severe impairments: fibromyalgia/chronic pain syndrome, arthritis, affective mood disorder, and sleep impairment. [TR 21]. At Step Three, ALJ Doyle determined that Plaintiff did not have an

4

impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR 26-29]. In reaching this conclusion, ALJ Doyle found that Plaintiff's arthritis did not meet the requirements of Listing 1.02 (major dysfunction of a joint) because she "ambulated independently without difficulty, demonstrated intact motor strength in all extremities and was found to have normal gross manipulation and grip strength." [TR 26].

ALJ Doyle also determined that Plaintiff's back pain did not meet Listing 1.04 (disorders of the spine) because the medical records "did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis."[2] [*Id.*]. Finally, he concluded that Plaintiff's mental impairments did not meet the criteria of Listing 12.04 (depressive, bipolar and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive disorders) because Plaintiff had only mild restrictions in activities of daily living, moderate difficulties with concentration, and no extended episodes of decompensation.[3] [TR 27-28].

---

[2] ALJ Doyle noted that Plaintiff's provider treated her back pain as arthritis. [TR 26]. However, because treatment notes suggested that Plaintiff might suffer from degenerative disc disease, ALJ Doyle considered Listing 1.04 out of an abundance of caution. [*Id.*].

[3] ALJ Doyle also considered Section 1.00 (musculoskeletal impairments) and Section 11.00 (neurological impairments), in light of Plaintiff's chronic pain syndrome, but found that "the evidence failed to meet or equal any listing under either category of impairments." [TR 27]. Similarly, he evaluated Plaintiff's

5

At Step Four, ALJ Doyle found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except that Plaintiff "could never climb ladders, ropes or scaffolds; should avoid all exposure to operational controls of moving machinery and unprotected heights; and limited to the performance of simple, routine and repetitive tasks." [TR 29]. Because Plaintiff had no past relevant work, transferability of job skills was not an issue. [TR 34].

ALJ Doyle then proceeded to the final step of the sequential evaluation. [TR 34-35]. At Step Five, he determined that there were a significant number of jobs in the national economy that Plaintiff could perform. [*Id.*]. ALJ Doyle based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. [*Id.*]. The VE testified that such an individual could find work as a buffer (29,300 jobs nationwide), checker (480,000 jobs nationwide) or hand packager (43,100 jobs nationwide). [*Id.*]. Based on the testimony of the VE, ALJ Doyle found that Plaintiff was capable of making a successful adjustment to other work. [*Id.*]. Thus, he concluded that Plaintiff was not under a "disability," as defined by the

---

fibromyalgia under Section 1.00 (musculoskeletal impairments) and Section 12.06 (anxiety disorders), and reached the same conclusion. [*Id.*].

6

Social Security Act, from January 7, 2008, the application date, through October 6, 2008, the date of the prior decision. [*Id*.].

On June 22, 2016, the AC denied Plaintiff's request for review of ALJ Doyle's administrative decision. [TR 1-3]. Plaintiff filed the instant action on July 18, 2016. [DE 2]. Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are now ripe for review. [DE 11, 13]. Plaintiff advances two arguments on appeal. First, she contends that the SSA's redetermination process is unconstitutional and deprived her of Due Process. Second, Plaintiff broadly complains that ALJ Doyle's RFC assessment was not supported by substantial evidence. The Court will address each of these arguments in turn.

## III.

Plaintiff's Motion sets forth detailed arguments about the constitutionality of the redetermination process. However, Plaintiff's points mirror those previously addressed by the Court in *Perkins v. Colvin*, Pikeville Civil Action No. 16-CV-35 (E.D. Ky. December 16, 2016), as well as by Judge Reeves in a series of decisions rendered on November 15, 2016, *see* 0:16-017-DCR, 0:16-061-DCR, 7:16-051-DCR, 7:16-059-DCR, 7:16-068-DCR, 7:16-075-DCR, 7:16-101-DCR, and 7:16-153-DCR, from across the Eastern District of Kentucky. These decisions clearly explain why no due process

7

error occurred in the redetermination procedure employed by the Acting Commissioner. Thus, Plaintiff is not entitled to summary judgment on this issue.

By contrast, Plaintiff's attack on ALJ Doyle's disability determination analysis is perfunctory at best:

> When the record in this case is considered in its entirety, the combined effects of Ms. Sumner's physical and mental impairments, reflect that [s]he could not perform a wide range of even sedentary work on a regular and sustained basis.
>
> …
>
> It is the contention of the Plaintiff under these standards of review, that there is not substantial evidence to support the denial of h[er] application for social security benefits. The objective medical evidence unequivocally documents that the Plaintiff suffers from fibromyalgia/chronic pain syndrome; arthritis; affective mood disorder, sleep impairment hearing loss of the right ear requiring hearing aid; obesity; post hysterectomy; benign breast lesion; depression; and marginal 6th grade education.

[DE 11-12 at 11-12].

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to … put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Although Plaintiff does indicate that ALJ Doyle erred in finding that she had the RFC to perform a reduced range of medium work,

she fails to identify which aspects of his conclusion are unsupported by substantial evidence and why. For instance, there is no suggestion that ALJ Doyle erred in weighing the medical evidence or improperly assessed Plaintiff's credibility. The Court could easily deem this argument waived. However, out of an abundance of caution, the Court will briefly explain why ALJ Doyle's RFC assessment at Step Four is supported by substantial evidence.

As explained *supra*, the ALJ is responsible for "evaluating the medical evidence and the claimant's testimony to form an 'assessment of [his] residual functional capacity'" at Step Four of the disability determination process. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). The RFC is an assessment of how the claimant's "impairments, and any related symptoms, such as pain, … cause physical and mental limitations that affect what [he or she] can do in a work setting." 20 C.F.R. § 416.945(a)(1). The RFC assessment is "based on all of the relevant medical and other evidence" in the case record, including "statements about what [the claimant] can still do that have been provided by medical sources," as well as descriptions of the claimant's limitations that have been provided by the claimant and his or her family members. 20 C.F.R. § 416.945(a)(3).

The aforementioned medical sources may be classified as treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 416.927(a)(2). A treating source is a "physician, psychologist, or other acceptable medical source who … has, or has had, an ongoing treatment relationship" with the claimant. *Id.* A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [his or her] case record." 20 C.F.R. § 416.927(c)(2). If the opinion is not entitled to controlling weight, the ALJ must decide how much weight to give it by considering the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's specialization; and other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c)(2)-(6).

A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has not examined the claimant but provided medical or other opinion evidence in the case. *Id.* "[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

Instead, the ALJ must weigh the opinion using the same factors discussed above. *Id.* While an ALJ will likely prioritize a treating source's non-controlling opinion over a non-treating source's opinion (and a non-treating source's opinion over a non-examining source's opinion), deviation from this general approach is not a *per se* error of law. 20 C.F.R. § 416.927(c)(2)-(6).

In this case, the hearing decision indicates that ALJ Doyle carefully considered a wide variety of medical record and treatment notes. When faced with medical opinion evidence, he appropriately identified the source of the opinion, discussed its content, and highlighted supporting evidence. He then scoured the record as a whole for evidence that was inconsistent with the opinion. Finally, he compared the opinion and its supporting evidence against all inconsistent evidence in the record, then determined how much weight to afford it.

For instance, ALJ Doyle afforded some weight to the opinion of Dr. Burns, a consulting physician, who determined that Plaintiff "had the ability to sit, stand, move about, lift, carry, handle objects, hear, see, speak and travel without any noted limitation. [*Id.*]. While ALJ Doyle observed that these conclusions were "supported by essentially normal physical exam findings," he noted that they did not account for Plaintiff's consistent reports of pain and history of treatment for pain management, and discounted the opinion accordingly. [*Id.*]. Because ALJ Doyle engaged in a

similarly thorough analysis with regard to other medical opinions in the record, carefully adhering to the applicable regulations in so doing, the Court finds that this aspect of his Step Four analysis was supported by substantial evidence.

The ALJ must engage in a similar analysis when a claimant's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Specifically, the ALJ must make a credibility determination "based on a consideration of the entire case record." *Id.* (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996)). "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.*

The ALJ must then explain his or her decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." *Id.* at 248. Blanket assertions that the claimant is not believable will not suffice, nor will credibility explanations "which are not consistent with the entire record and the weight of the relevant evidence." *Id.* However, reviewing courts must give great weight and deference to the ALJ's credibility determination. *Id.*

12

In this case, ALJ Doyle found that Plaintiff's testimony about the intensity and limiting effects of her symptoms were not entirely consistent with the medical evidence of record. For instance, Plaintiff stated that she led a limited lifestyle at the hearing. However, as ALJ Doyle observed, Plaintiff admitted that she was capable of performing self-care tasks, preparing meals, and driving. [TR 30-31]. She also reported that her back hurt constantly, her feet felt numb, and her hands felt like "a bunch of needles," cramping up when she tried to use them. [*Id.*]. ALJ Doyle pointed to several treatment notes indicating that Plaintiff was satisfied with her current pain management regimen. [*Id.*]. He also observed that Plaintiff's "physical exam findings were essentially normal, with normal gait, normal strength, normal range of motion and intact grip and sensation." [*Id.*].

In short, ALJ Doyle painstakingly compared Plaintiff's statements against the medical evidence of record, taking care to detail the content of each evaluation and treatment note. He then explained why these records did not fully support Plaintiff's assertions, adversely impacting her credibility. The Court therefore concludes that ALJ Doyle's assessment of Plaintiff's credibility at Step Four is supported by substantial evidence.

**IV.**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)  Plaintiff Charlene Sumner's Motion for Summary Judgment [DE 11] be, and is, hereby **DENIED**;

(2)  The Commissioner of Social Security's Motion for Summary Judgment [DE 13] be, and is, hereby **AFFIRMED**; and

(3)  A Judgment will issue contemporaneously with this Memorandum Opinion and Order.

This the 26th day of April, 2017.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge